**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

      **Plaintiff,**

       v.

BRYAN DIAZ-ORTIZ,

      **Defendant.**

**CRIMINAL NO. 26-cr-198 (RAM)**

<u>**OPINION & ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge.

This matter comes before the Court on Defendant Bryan Diaz-Ortiz ("Defendant" or "Diaz")'s *Motion Requesting Revocation of Detention Order or De Novo Bail Hearing Under 18 U.S.C. 3145(b)* (the "*Motion*"). (Docket No. 17). For the reasons described below, the Court **GRANTS IN PART** Defendant's request for pretrial release subject to the conditions specified herein and in the separate order of release. Moreover, the Court **ORDERS** that Defendant's pretrial release be delayed pending a supplemental report from the Probation Office regarding the availability of a suitable third-party custodian.

## I.    BACKGROUND

On May 20, 2026, a Grand Jury returned an indictment against Diaz. (Docket No. 13). Diaz is charged with the federal crime of possession of a machinegun. <u>Id.</u> On May 19, 2026, Magistrate Judge

Marcos E. Lopez held a bail hearing as to Diaz, adopted the findings and recommendations of the pretrial report, and ordered that Diaz be detained pending trial. (Docket No. 22).

On May 27, 2026, Diaz filed the present *Motion*. (Docket No. 17). Therein, he argues that he "has no felony convictions, much less a history of violence." Id. at 1. He highlights his lack of felonies, employment at a business in Culebra, and robust familial support. Id. at 2. Diaz furthermore contends that his case does not carry a presumption of detention as it alleges only "passive possession of an automatic pistol." Id. at 6.

As to the conditions of his release, Diaz avers that his brother is "ready, willing, and able to serve as his third-party custodian and he has a home in Bayamón where [he] can reside during the pendency of the case." Id. at 7. He argues that his flight in the heat of the moment of arrest is materially different from the risk that he will fail to appear in court in the future, and points to a litany of cases indicating that release is appropriate given his underlying offense and the circumstances. Id. at 3, 7-10. Lastly, Diaz proposes that he be ordered to: execute a $10,000 unsecured bond, reside with his brother, maintain employment, be subject to home detention, and abide by electronic monitoring to assure community safety. Id. at 10.

The Court held a *de novo* bail hearing on May 29, 2026. (Docket No. 23). At that hearing, the Government both proceeded by proffer

and presented evidence; Defendant responded with various arguments as to why the detention order should be revoked. Id. The Government submitted an exhibit consisting of the bodycam video. (Docket No. 24). The Court took the matter under advisement and noted that it would consider an *Amended Pretrial Services Report* after Diaz was interviewed. (Docket No. 23).

The Probation Office disclosed the *Amended Pretrial Services Report* on June 2, 2026. (Docket No. 29). Therein, the Probation Office indicated that the new proposed third-party custodian would be Diaz's mother rather than his brother. Id. at 2. The Probation Office stated that Diaz's mother had expressed hesitancy about serving as a third-party custodian given her impending move and that they had been unable to reach her for an agreed-upon follow-up interview. Id.

## II.  LEGAL STANDARD

A district court reviews a Magistrate Judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014). A district court may also "take additional evidence or conduct a new evidentiary hearing when the defendant has placed relevant facts at issue." Id.

### A. The Bail Reform Act

Pursuant to the Bail Reform Act of 1984 (the "Act"), a judicial officer must determine whether a person charged with an offense shall be detained or released. *See* 18 U.S.C. § 3141(a). Section 3142(e) of the Act provides that if after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person prior to trial." 18 U.S.C. § 3142(e).

A statutory presumption in favor of detention does not apply to this case. *See* United States v. Berríos-Aquino, 2022 WL 17075919, at *2 (D.P.R. 2022) (noting that the offense of possession of a machine gun is not listed in sections 3142(e)(2) or (3) of the Bail Reform Act). However, the Bail Reform Act authorizes pretrial detention for alleged felonies involving the possession or use of a firearm. *See* id.; 18 U.S.C. § 3142(f)(1)(E). Detention is also authorized in cases where there is a serious risk that the defendant may flee. *See* id.; 18 U.S.C. § 3142(f)(2)(A).

Section 3142(f) of the Act establishes the instances in which an accused individual is eligible for detention and, therefore, a detention hearing is proper. *See* 18 U.S.C. § 3142(f). Specifically, Section 3142(f)(1) requires that the judicial officer hold a

detention hearing upon motion of the attorney for the Government in cases which involve "a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed" and other enumerated offenses, including any felony that involves the possession or use of a firearm or destructive device. 18 U.S.C. §§ 3142(f)(1)(A)-(E). Likewise, Section 3142(f)(2) authorizes the court to hold a detention hearing upon government motion or *sua sponte* in cases that involve "(A) a serious risk that such person will flee; **or** (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2) (emphasis added).

The standard of proof for detention due to dangerousness is **clear and convincing evidence**. Id. Clear and convincing evidence is "more than preponderance of the evidence and less than beyond reasonable doubt." United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984). This standard requires "a high degree of certainty that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice." Id. The standard of proof for detention due to risk of flight is preponderance of the evidence. *See* United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

When determining whether there are conditions of release that

assure a defendant's appearance and the safety of the community during a detention hearing, judicial officers must take into consideration the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Furthermore, the Court may consider uncharged conduct in assessing the degree of danger posed by the defendant's release. *See* United States v. Rodriguez*,* 950 F.2d 85, 88-89 (2d Cir.1991).

Under the Act, a decision to detain must be supported by written findings of fact and a statement of reasons; it is then immediately reviewable. *See* 18 U.S.C. § 3142(i). Although not required by the Act, the First Circuit has indicated that "a similar statement of reasons should ordinarily accompany release orders in contested cases." United States v. Tortora, 922 F.2d 880, 883 (1st Cir. 1990).

### III. DISCUSSION

As previously noted, 18 U.S.C. § 3142(g) provides the factors this Court must consider in determining whether there are conditions of release that would reasonably guarantee: Defendant's appearance as required; the safety of other persons; and the safety of the community. While some factors do weigh in favor of

detention, this Court concludes that the Government **did not** establish by a preponderance of the evidence that there is **no** condition or set of conditions that will reasonably assure Defendant's appearance at trial. The Court determines that the Government also did not prove **by clear and convincing evidence** that there is **no** condition or set of conditions that will reasonably assure the safety of the community. The analysis of the Section 3142(g) factors is as follows.

### A. The nature and circumstances of the offense charged

As noted above, Diaz is charged with the federal crime of knowing possession of an automatic firearm. (Docket No. 13). This is a serious offense. *See, e.g.*, United States v. Couvertier-Pollock, 2024 WL 1756504, at *5 (D.P.R. 2024); Berríos-Aquino, 2022 WL 17075919, at *2; United States v. Diaz-Collazo, 2018 WL 377277, at *2 (D.P.R. 2018). Moreover, the evidence presented as to the allegation that Diaz ran from authorities at the time of his arrest weighs in favor of detention based on his risk of flight.

### B. The weight of the evidence against Defendant

According to the Government's arguments at the *de novo* bail hearing, (Docket No. 23), Diaz has admitted in interviews with special agents that he knowingly purchased a firearm modified to fire fully automatically, and that his motivation was to defend himself from being shot at. Id. Moreover, the Government examined

a witness at the *de novo* hearing who reviewed bodycam footage depicting officers reacting to seeing a firearm in the glove compartment of Diaz's vehicle. Id. Therefore, the weight of the evidence appears strong. "[N]umerous courts have recognized that the seriousness of the charge and the weight of the evidence can create a strong incentive for a defendant's flight." United States v. Rodriguez-Adorno, 606 F. Supp. 2d 232, 236 (D.P.R. 2009).

However, the Court is not concerned with Defendant's guilt or innocence at this stage. *See* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence."). Instead, the Court must assess whether there is a set of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). The remaining Section 3142(g) factors lead to the conclusion that such conditions exist.

**C. Defendant's personal history and characteristics**

Defendant's personal history and characteristics weigh in favor of release. With the exception of roughly a decade in Florida, where he was employed in scaffolding, Diaz has been a lifelong resident of Puerto Rico. (Docket No. 29 at 4). He has apparently never travelled outside of the United States. Id. at 3. Diaz has significant family ties to Puerto Rico, including a son he maintains regular contact with and provides child support to in Bayamón. Id. at 2. He also appears to have maintained regular

employment since returning to Puerto Rico from Florida and is reported to have been working "7 days a week" in Culebra at the time of his arrest. Id. at 4. Hence, Defendant does not appear to have meaningful foreign ties and fleeing would sever his lifelong familial and occupational ties to Puerto Rico.

Diaz has no reported history of mental health conditions, other than a visit to a specialist after his brother's death. Id. at 5. He completed a drug diversion program in 2020 and offered to provide a urine sample for testing. Id.

As to his arrest history and prior record, Diaz points to the fact that he "has no felony convictions, much less a history of violence." (Docket No. 17 at 1). It is true that Diaz has only misdemeanor convictions; he has been arrested several times for alleged felonies but was not convicted for any of them. The Court takes this all under consideration.[1] Fortunately for him, none of Diaz's prior arrests were for violent felonies and none resemble his present firearm-related charge. (Docket No. 29 at 5-7).

Less auspicious is the fact that on two prior occasions--once in 2018 in Florida and once in 2019 in Florida--bench warrants

---

[1] In the sentencing context, the First Circuit warns against relying on mere charges. United States v. Castillo-Torres, 8 F.4th 68 (1st Cir. 2021). However, pre-trial detention determinations are simply a different beast. The First Circuit has held that nothing in the Bail Reform Act nor in the Constitution bars judges from considering a defendant's previous bad conduct, even if it did not result in a conviction; however, "a prior arrest should not be accorded the weight of a prior conviction." United States v. Acevedo-Ramos, 755 F.2d 203, 209 (1st Cir. 1985) (internal quotation omitted).

were issued because Diaz failed to appear in court. Id. at 6. Nevertheless, the Court notes that on both occasions, Diaz appears to have subsequently complied with the authorities. Id. In the latter instance, the Florida court permitted his conditional release just days after the bench warrant was executed. Id. Accordingly, the Court finds that Defendant does not have a history of violence and that his two instances of noncompliance from several years ago do not outweigh his otherwise favorable personal history and characteristics.

Diaz has some level of familial backing. He avers in his *Motion* that release is proper partly on account of "strong family support," as evidenced by the presence of his brother and mother in the courtroom. (Docket No. 17 at 2). However, the area of most significant concern for the Court is the availability of a third-party custodian. Diaz avers in his *Motion* that his brother is "ready, willing, and able to serve as his third-party custodian and he has a home in Bayamón where [he] can reside during the pendency of the case." (Docket No. 17 at 7). Since then, however, the Probation Office's attempts to ascertain the true identity of the third-party custodian have faltered. (Docket No. 29 at 2). It now appears that the family's proposal is for Diaz's mother to serve as custodian, and she is hesitant to do so given her impending move to Florida. Id. The Probation Office has since been unable to reach her for an agreed-upon follow-up interview. Id.

Hence, while Defendant's personal history and characteristics weigh in favor of release, the Court requires further evidence of the availability of a genuine third-party custodian before permitting his release. As a result, any relief in this order shall be contingent upon the Probation Office's confirmation that a suitable third-party custodian is available, willing, and able to supervise him.

The Court **ORDERS** that Defendant's pretrial release be delayed pending a supplemental report from the Probation Office regarding the availability of a suitable third-party custodian.

### D. The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release

The Government bears the evidentiary burden of proving that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community" under a clear and convincing evidence standard. 18 U.S.C. § 3142(e). "Undoubtedly, the **safety of the community can be reasonably assured without being absolutely guaranteed**." Tortora, 922 F.2d at 884 (emphasis added). Thus, the Government needed to present "'clear and convincing' evidence of defendant's dangerousness" to justify his detention without bail. United States v. Goveo-Santiago, 901 F. Supp. 56, 58 (D.P.R. 1995). The weight of the evidence is insufficient to establish Diaz's dangerousness given the Court's aforementioned findings.

## IV.  CONCLUSION

Based on the grounds stated in this Opinion, Defendant shall be released, subject to the pending supplemental report from the Probation Office and subject to the following conditions:

1. Defendant must not violate federal, state, or local law while on release.

2. Defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

3. Defendant must advise the Court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

4. Defendant must appear in Court as required and, if convicted, must surrender as directed to serve a sentence that the Court may impose.

5. $10,000 unsecured bond signed by Defendant.

6. **Qualification by the United States Probation Office of a third-party custodian in a supplemental report to the Court.**

7. Electronic monitoring and the Probation Office's verification of electronic monitoring device capability at the residence of the third-party custodian.

8. Home detention. Defendant shall be restricted to his and the third-party custodian's residence at all times except for medical necessities, to continue or seek employment,

and for court appearances or other activities specifically approved by the Court.

9. Defendant shall avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution.

10. Defendant shall submit to supervision by and report on a regular basis to the United States Probation Office.

11. Defendant shall continue or actively seek employment.

12. Defendant will not use or unlawfully possess any narcotic drug or other controlled substances defined in 21 U.S.C. § 802 unless prescribed by a licensed medical practitioner.

13. Defendant shall refrain from the excessive use of alcohol.

14. Defendant should receive medical or psychiatric treatment as recommended by the Probation Officer.

15. Defendant should participate in a program of inpatient or outpatient substance abuse therapy and counseling as deemed necessary by the U.S. Probation Office or the Supervising Officer.

16. Defendant shall not possess a firearm, destructive device, or other dangerous weapon.

17. Defendant shall surrender any passport to the United States Probation Office.

18. Defendant shall not obtain a passport or other international travel document.

19. Defendant shall report, as soon as possible, to the U.S. Probation Office or the Supervising Officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

20. Defendant shall abide by the following restrictions on personal association, place of abode, and travel: Defendant shall reside at the address of record and shall not leave the jurisdiction of this District without first obtaining written permission from the Court.

21. As an exception, the Chief U.S. Probation Officer or his designee may authorize temporary changes of address in Puerto Rico and temporary travel outside of Puerto Rico to the mainland U.S. only, not exceeding 15 calendar days, provided the U.S. Attorney has no objection to it. If there is an objection, a request will have to be made in writing to the Court.

22. Defendant shall not enter any airport or pier under this exception unless authorized by a PT Officer.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of June 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge